COMMONWEALTH *vs.* JOHN FARRELL.

Middlesex.    January 29, 1894. — February 27, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, & MORTON, JJ.

*Assault — Identity of Assailant — Instructions — Exceptions.*

No exception lies to the refusal to give instructions in the terms requested, if they are given in substance.

INDICTMENT, for an assault with intent to commit rape upon Katie Closeman, on February 28, 1893, at Newton. Trial in the Superior Court, before *Bond*, J., who allowed a bill of exceptions, in substance as follows.

Katie Closeman testified that, as she was walking towards her home, she was tripped up by a man who came up behind her; that she fell to the ground, and while in that position, and while

struggling to her feet, and after she got up from the ground, the alleged assault was committed; that the struggle was going on about five minutes; and that she screamed for help, and he left her as another man appeared.

She also testified to what the man said to her, and that she saw the face of the man who assaulted her; that she smelled liquor in his breath; that he had on a dark derby hat and a dark gray overcoat; that it was about nine o'clock on February 28; that there was no moon and it was snowing, and there was snow on the ground from prior storms; that the only lights on the street were gas lights, the nearest one on the opposite side of the street and some distance away; that she was positive the defendant was the man who assaulted her; and that she had no recollection of seeing him before.

The only other testimony to the identity of the defendant was that of Albert W. Frye, who testified that he was at his home not far from the locality of the assault, and heard some one scream, and later heard some one call for help; that he went to the assistance of the person, and as he came near the locality he saw a woman and a man on the sidewalk, and as he was within about a rod of the woman the man came away, and he passed him and went to where the woman was; that from what she told him he went in pursuit of the man, and, over-taking him on a private way, exchanged words with him when they were about two feet apart; that the man went on and Frye followed, and the man turned and threatened him and then went on; that Frye again followed him a little distance farther on a street, the man on one side and Frye on the other, when the man turned back and Frye went on; that both times when the man spoke to him it was on a private way leading from the street where the assault occurred to the street parallel with it, and there were no lights on it; that the nearest lamp to the place where the assault occurred was four rods away; that there was no moon that night, and it was snowing; and that he iden-tified the defendant as the man he followed, and stated that he had not seen him before that night.

The defendant's father, one of his neighbors, and two of his brothers testified positively that the defendant was at his own home before nine o'clock on the evening of February 28.

It was conceded that he could not have been there at that time, if he committed the assault.

The defendant asked the judge to instruct the jury as follows:

" 1. Very great care should be taken in weighing the testimony of witnesses who testify to the identity of the party charged with the offence with the party who committed it, where, as in this case, their only opportunity for identifying the party who committed the offence is confined to the space of a few minutes only in the night-time, on the street, with the nearest lamp four rods away, in the midst of a snow-storm, and under most distracting circumstances; particularly where this evidence is contradicted by evidence of an alibi.

" 2. The jury must not take into consideration, in weighing the evidence as to identity, the opportunities of the witnesses to see the defendant since the crime with which he is charged was committed."

The judge refused so to rule, and instructed the jury as to the facts necessary to be proved to sustain the allegations in the indictment; and upon the evidence as to the identity of the defendant as the person who committed the assault instructed them that, in considering the evidence of Closeman and Frye, the jury should consider the opportunity which each of them had to observe the person concerning whom they had testified; that they should consider the condition of the locality as to light and all the other circumstances shown by the evidence, and the ability of the witnesses during the time they saw the person to observe his features, his voice, his dress, and any other marks of identity of the person whom they saw, so as to be able to describe the person, and to recall any marks of identity afterwards, and to testify to them and to form an opinion from what they saw that the defendant was the person whom they saw; and that the jury must also be satisfied that the witnesses had testified as to the identity of the defendant from what they saw that night, and not to an opinion formed afterwards from what they learned later.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. L. Harvey*, for the defendant.

*F. N. Wier*, District Attorney, for the Commonwealth.

MORTON, J.   The instructions which were given directed the attention of the jury clearly to the necessity of their being satisfied as to the opportunity which the witnesses who had testified to the identity of the defendant had for recognizing him, and also to the point that they should be satisfied that the witnesses testified to what they saw on the night of the assault, and not to what they learned afterwards, and covered the requests of the defendant.   It was not necessary that the court should instruct in the exact words used by the defendant.   *Commonwealth* v. *Tuttle*, 12 Cush. 502.   *Commonwealth* v. *Moore*, 157 Mass. 324.

*Exceptions overruled.*